Good afternoon. May it please the Court, Nicole Weinberg, Certified Law Student on behalf of Appellate Hohner. As you said, I'd like to reserve three minutes for rebuttal, and Jeffrey Gallegos, also Certified Law Student, will be doing the rebuttal. I'd like to begin by addressing the fundamental distinction between a sealing order and an injunction, and why, in the ordinary course, they are materially distinct. I will then turn to what the government would have been required to prove to show whether, in this case, the sealing order was also an injunction. First, beginning with why a sealing order and injunction are fundamentally different. We agree with the government's position that GTE clearly holds an injunction would prohibit the release of documents. But in GTE, there was an injunction, and in our case, we have a sealing order, not an injunction. In GTE, the agency was willing to disclose the documents, but for the injunction, whereas here, we have the agency themselves requesting the sealing order. In the next party proceeding in which they were the only party. And Morgan recognizes that the D.C. Circuit Court recognizes the distinction between these two orders when they required more than just a showing that a seal exists to prohibit the agency from disclosing these documents. Counsel, if, as you argue, an injunction and a sealing order are different, what should we make of the D.C. Circuit's rationale in Morgan that if a sealing order is intended to prohibit disclosure, and it's a court order, then the government, as in the situation with an injunction, has no discretion to release the documents? Our interpretation is that with a sealing order, they do have discretion to release the documents because it's the agency records, not court records. But it's a court order. A sealing order is issued by a court. And so the government cannot release those documents unless it has permission to do so from the court, which I think was evidenced in this case when the government had to seek permission to file publicly the court's clarification order with respect to the meaning of the sealing order. So, I mean, of course, Morgan's a D.C. Circuit decision. It's not Ninth Circuit. Are you arguing that we shouldn't follow Morgan? No, we're arguing that we should follow Morgan, but with some distinctions of how Morgan has been interpreted by the lower courts, where they take the language of a clarifying order saying intent to prohibit disclosure makes it enough for a sealing order to be an injunction, which we don't think is the correct interpretation of Morgan. Okay. So, in this instance where we have a clarifying order that says that sealing order is intent to prohibit disclosure, in your view, that's not sufficient. Is that correct? Yes, that's correct. What would be sufficient in a sealing order that anyone would say this order seals the documents and we really mean it? Well, we would want the clarifying order to say something along the lines of that the sealing order is intended to be an injunction such that the government cannot release these documents. Is there authority for that, that that additional language is mandatory? No, there's not authority for that, but there's also not authority beyond Morgan that a sealing order can ever be also an injunction. So, I thought one of your arguments was that a sealing order shouldn't be viewed as an injunction under GTE Sylvania because it was within the government's control. What I read the suggestion in your brief was that the government could determine whether these documents are going to be under seal. And I think I struggle with that proposition because the government doesn't control whether the court will enter that order. Government may ask for it, but also, as you know, in Kamakana and Pintos and Copley, there's legion of Ninth Circuit case law explaining the standards to place something under seal because of the public's First Amendment right of access to court proceedings. And so, the government has to generally show a compelling interest and that some kind of public disclosure would harm that interest and that there's no alternative to closure. So, the government, in my view, I just, it doesn't matter of law, I don't think it's correct to say the government can control that documents are going to be sealed. They can ask, but it's up to the court to make those findings. So, if I'm correct, how do you respond to that? What do you do with your argument where you're suggesting that this is within one party's control? I think that's a fair assessment. The point that we are making with that is more so that the agency can decide they need something to be under seal and then requested the seal and then assuming it goes through all of those procedures, it will be under seal. The problem is if we treat that seal as an injunction, then we're allowing the agency to get an injunction against themselves, which is incredibly unusual seeing a party get an injunction against themselves. So, that's more what we meant by their ability to control the seal rather than that they are free to be granted the seal. Well, wouldn't it, just as a logical matter, be inconsistent for the government to go before the court and argue that there were compelling government interests at stake that would be jeopardized if certain information were made public? And then at the same time, government retained the ability to disclose that information even after the court had placed it under seal. If the government were taking the position, in other words, that it could disclose this information at any time it shows, it would not have any ability to tell the court that there was compelling interest at stake and that these documents needed to be under seal. Is there a temporal issue that needs to be addressed? That is, at the time that the request to put these documents under seal was made, the showing was made at that time. 20 years has now passed. Can the government, or must the government, have a finding that the same compelling interest exists 20 years later? That the compelling interest does not exist into perpetuity? I agree that's one of the issues with the sealing order. And taking into the context of how it was sought and how the clarifying order was sought, that it's still in place. Is the 20 years has passed, that it's still in place? We don't know when it will be raised. And it's typical that sealing orders will automatically be raised after a certain time period and things like that in different jurisdictions. So I would agree with that assessment. We're almost at the three-minute mark, but I want to ask you one more question. Why can't Mr. Hohner go back before the Southern District of California and file a motion to have the court unseal the records he seeks? Hohner actually went back to the district court and requested proof of those proceedings so that he could potentially do that. And the response they gave to him was that that case number did not exist? Well, I understand that. But now, as a matter of fact, you have additional information that Mr. Hohner could provide. Typically, an MJ case number is merged with a CR number. Once the indictment or the complaint is filed, then the MJ number is merged. And so it's very likely that if the clerk's office attempted to seek that number, they would have had some difficulty finding it as an initial matter. But I believe Mr. Hohner could provide additional information in the motion seeking to have that seal lifted. And I'm wondering if you have anything other than what occurred before as a basis to say that there's no way he can get this seal lifted. Not necessarily. I would just say that he's not necessarily seeking for the seal to be lifted. He's just seeking for the agency themselves to give the documents to him in their own independent records separate of them being classified as court records. Okay. So we're under two minutes. Would you like to stop now and reserve the remaining time? Yes, please. Thank you.  All right. And Mr. Jimenez-Barragan, did I say that correctly? Yes. Matthew Barragan, Assistant United States Attorney. Good afternoon. My name is Matthew Barragan for the Federal Appellees. May it please the Court, in this FOIA case, ICE withheld 23 pages of documents that were ordered sealed, as you've discussed, by the Southern District of California. Hohner's FOIA action improperly seeks to attack the decisions of the Southern District of California in San Diego in the Central District of California in Los Angeles in a FOIA action, which is not allowed. To do so would place the government in an untenable position of having to choose which court's order to follow, to follow the Southern District of California in San Diego or a potential conflicting order out of Los Angeles. And that could possibly place the government in a position of seeking sanctions or contempt of court and also undermine, potentially, the interest of following orders of the courts and independence of the judiciary. Mr. Barragan, can I ask you my temporal question? That is, first of all, are you asking that we extend Morgan in the Ninth Circuit? And if we do extend the test, should there, in fact, be a temporal factor that the Ninth Circuit considers to at least address affirmatively the dismissal of sealing orders might otherwise have lasted into perpetuity? Well, as Judge Beatty referenced, the district court judge or the Southern District of California re-evaluated in 2018 when the government went back to seek clarification and determined that these records should remain sealed and not be publicly disclosed. And so I think the best information that we could have under Morgan, if that were to be extended, is an order from the issuing court. Mr. Barragan, can I interrupt you for just a moment? Yes. I looked at the actual language from the court. What it confirmed was that at the time that the order was issued, it was intended to prohibit disclosure. The actual order from the court did not explicitly state that those circumstances existed 20 years later. I mean, it was very artfully worded. Your Honor, I think the court order and the clarification was sought on a supplemental briefing to provide the district court judge with clarification that the intention of the sealed order in a criminal investigation was to keep these records disclosed from the public. In a FOIA action, it's binary. Either Mr. Hohner is entitled to the records and the world can see those documents, or no one is. And so I think it's important to, again, go back to the fact that this is a FOIA action seeking records for the public. And you have here a judicial officer who considered a request with material information and reconsidered it later and renewed that decision. So I think we have two orders clarifying the court's intent. And that is, under Morgan, sufficient to make it so that the plaintiff under FOIA is not able to seek those records in this action. The proposed course would be to seek— Counsel. Yes, go ahead. Could I ask a question, counsel? I'm confused. Perhaps you can clear me up. You mentioned that the sealed order was entered in a criminal proceeding, but as I remember the record, it was the ICE personnel that got the warrant for the search. I don't know why Mr. Hohner is involved in an ICE proceeding. Is he an alien? So ICE did not exist in 1998. What the record contains is that the United States Customs Service, working with local law enforcement, undertook a search of the premises. And Mr. Hohner, which he references his criminal case, importantly, that was a state matter brought by the district attorney in VISTA, not the U.S. Attorney's Office. And so I don't have a lot of background on some of the criminal matters, nor do I think it is completely relevant for a FOIA action. Well, I'm just trying to figure out why Customs Enforcement was searching his house. I can't put my finger on any reason for that and why it's a criminal action, but you're telling me it was a criminal action, not an immigration action. Your Honor, I can tell you that it was an investigatory request, and the content of that record remains subject to me, so I can't disclose the details behind that. Other than to say, in the clarifying order, the court affirmed that it was a search warrant application, an affidavit. So, Mr. Bergan, assuming that Mr. Hohner is correct and he cannot file any sort of motion or seek to have the sealing order lifted so that he can obtain these records from the Southern District of California, what effect does that have, if any, on this FOIA action? The FOIA action should be resolved because there's been clarification and there could be conflicting orders. But I do believe in looking through third parties, media organizations, it's typical to file motions to unseal. There are alternative ways to go to the Southern District of California to seek to obtain this information and have the jurisdiction that issued that order evaluate independently. There are independent arguments that would be more appropriately raised in San Diego, again, and not in Los Angeles, seeking to obtain records that we can't really explain based on the nature of the documents and the order that the court has clarified still applies today. Go ahead, you have a couple more minutes if you have more you'd like to say. Yes, I'd just like to say in some of these arguments, potential Brady violations or constitutional challenges were raised. And again, that has nothing to do with the cause of action in a FOIA case is whether the government is improperly withholding agency records. And in this case, we've argued that the proper following a court order is proper and it is not an improper withholding. We saw the intent of the court in 2018 responding to the 1998 order, and it just would place the government in a difficult choice having to choose between two conflicting orders potentially. And FOIA doesn't account for this. And there are other ways for Mr. Hohner to obtain the information that he seeks. And if there's no further questions, the appellees respectfully request that the court affirm the judgment in this case. Can I ask one final question? Do you anticipate any problem with a factor test, which would require in a clarifying confirmation of the temporal component that I referenced earlier? Would there be any problem with that? I think that, you know, Morgan laid out several potential avenues for the agencies to provide background and alleviate any concern that there was not a – there was a choice here on whether or not to comply. I think that the – seeking a clarifying order is the most accurate way to go about this. Requiring further, I think I would defer to, you know, my colleagues in the Southern District of California and the U.S. Attorney's Office that applied for that order. But I would say that having a judicial officer independently evaluate an affidavit, an application, and there are a number of reasons why we would want to keep certain information sealed for the public safety, for benefits of witnesses. There's a number of reasons, and if FOIA is allowed as an option to determine who's being investigated, that's just a difficulty that we find. All right. Judge Bea, Judge Gonzales-Rogers, anything else? Okay. Thank you. Thank you, Mr. Barragan. All right, so we're back to Mr. Gallegos for a rebuttal. Thank you, Your Honor. May it please the Court? I'd like to first respond to the temporal issue that came up. One avenue for the government to proceed is to seek a permanent injunction rather than to rely on perpetuity of the seal if these exemptions still apply. The different concerns that counsel raised are all outlined in 562B of FOIA. So the question we want to raise before the Ninth Circuit is if the Ninth Circuit decides to extend Morgan and to allow a sealing order to basically grow into an injunction, then the Morgan opinion… Counsel, why is that an extension of Morgan? Didn't Morgan say exactly that? I mean, Morgan dealt with the sealing order and talked about ways in which that could be treated as an injunction. So how are we extending Morgan? I mean, to adopt Morgan. I misspoke. But within the Morgan opinion, there's a procedure outlined. On page 196 of the opinion, the first thing that happens is an in-camera review. We haven't had that in this case. An in-camera review is discretionary under FOIA. So we would ask that if Morgan does come into the Ninth Circuit, that that be part of the process. After that, in page 198 of Morgan, there are four factors. There's the sealing order itself. There's extrinsic evidence that came with the sealing order, like additional papers, the application, stuff like that. The third factor is sealing orders in similar cases in the same district, and the court rules applying to sealing orders. After all of that, if it's impossible… factors are cumulative. In other words, that the agency would have to go through each one of these factors in order to establish that the sealing order should be treated as an injunction. Oh, that's up for the panel to decide. We think that that's what Morgan says, and that's the kind of outline. How do you reconcile that with when Morgan continues to say the agency may also satisfy its burden by obtaining a clarification order as an additional means of meeting its burden? How does that make that cumulative to the other factors? Because the Morgan court used the word impossible before the clarifying order came in, that after these other steps were made, then is when the clarifying order came in. And so what we don't want to have happen is a way for a federal agency to bypass those other considerations and go straight to a clarifying order and say, okay, that's it. We got our clarifying order, and that's all we need. Because this is a FOIA case, and because FOIA is meant to promote government transparency, and no matter who's in charge of the executive branch, there's always going to be an area of the citizenry that is motivated to conduct civilian oversight. We want to preserve that within FOIA, and we want to understand how our federal agencies are making decisions. We want to understand how federal agencies are spending our tax dollars. So you see how the clock is going up now? Yes. It's going back up. So this means you're over a minute over time at this point. I'm sorry. Give you a moment just to wrap up. That's it. If there are no further questions, we just ask the court to consider remanding if the Ninth Circuit adopts Morgan and remand to the district court to follow Morgan as it's laid out. Thank you. Thank you. All right, thank you. We'll take the case under submission. Thank you all for your arguments this afternoon. They were very helpful, and congratulations to the student advocates. You represented your client very well in court today, so thank you very much. Thank you.
judges: Bea, Bade, Y. Rogers